IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH L. BAUMGARTEN, III, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-13-1493 |
| HOWARD COUNTY DEPARTMENT OF CORRECTIONS, et al., | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

Pending is self-represented plaintiff Joseph L. Baumgarten, III's complaint under 42 U.S.C. § 1983 (ECF No. 1). Defendants Howard County Department of Corrections and Jack Kavanagh, by counsel, have filed a motion for summary judgment.[1] ECF No. 28. Baumgarten has not filed a response.[2] No hearing is needed to resolve the issues presented.[3] *See* Local Rule 106.5 (D. Md. 2014). For reasons to follow defendants' motion for summary judgment IS GRANTED.

**BACKGROUND**

Baumgarten, currently confined at the Western Correctional Institution in Cumberland, Maryland, claims defendants hindered his religious practice while he was a detainee at the

---

[1] Defendants previously moved for dismissal of plaintiff's claim which was granted in part and denied in part. ECF Nos. 16 & 17.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on August 12, 2014, plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 32. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

[3] Defendants' motion to seal plaintiff's medical records (ECF No. 31), which is unopposed, shall be denied. Defendants offer no explanation as to why the records require sealing or are impractical to redact. *See generally Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014).

Howard County Detention Center ("Detention Center"). Baumgarten, who identifies himself as member of the Jewish faith alleges that he was repeatedly denied Kosher meals while housed at the Detention Center. ECF No. 1.  As redress, he seeks monetary damages. *Id*.

## I.     Background

Baumgarten, claims that on February 3, 2013, he wrote to Howard County Department of Corrections for "repeatedly giving [him] non-Kosher food." He was advised on February 13, 2013 that "it [would] be sorted out."  On March 29, 2013, he again wrote to the Department of Corrections indicating he was still not being served Kosher food.  He received a response on April 8, 2013, indicating that "Due to the issues/work being done in the kitchen during this time period...everyone received bag meals.  This was an unavoidable situation." ECF No. 1.

Baumgarten further alleges that on April 8, 2013, at breakfast he was given a regular meal.  Lt. Glover advised him that a Kosher meal was not available but they could substitute a lunch or a dinner for a breakfast meal. Baumgarten states he never received the substitute meal. Baumgarten states that the response to his grievance was that dietary indicated he had received a Kosher breakfast an additional Kosher breakfast was ordered and "should" be delivered in a few days. *Id.*

On April 10, 2013, Baumgarten states that Defendant Ogunsola[4] was handing out breakfast when Baumgarten advised him that he was to get a juice with breakfast. Ogunsola advised that he would need to verify plaintiff's statements.  He took the tray and returned with another non-Kosher meal which looked like it had been "thrown across the room."  The response to Baumgarten's grievance was that "this was an unfortunate incident.  Measures are being taken to ensure this doesn't happen again."  *Id*.

---

[4] Plaintiff's claim against Ogunsola was previously dismissed. ECF Nos. 16 & 17.

2

Baumgarten avers that he personally spoke with Kavanagh who indicated he would meet Baumgarten's religious needs for Kosher meals and advised Baumgarten to stop filing grievances regarding the issue. ECF No. 12. Baumgarten previously provided the court several, but not all, of the grievances he filed regarding his efforts to be provided Kosher meals. *Id*., Exhibits. The grievance dated February 3, 2013, specified that Baumgarten is Jewish. He states that he has been at the detention center since January 18, 2013. The grievance is difficult to read but appears to indicate that despite it being noted he was to get a Kosher meal he had not been provided one for approximately a week. The response to the grievance indicates that someone met with Baumgarten and "a number of the issues (or 'failures') have been addressed. At a meeting it was determined the tray would be Styrofoam. Otherwise items on the menu have been reviewed for the proper Kosher markings." *Id*.

The next grievance form provided by Baumgarten, dated March 29, 2013, indicates that he had lost 30 pounds since his arrival at the Detention Center and continued to have difficulty receiving the approved Kosher meals. *Id*., p. 2. The notes regarding efforts at informal resolution indicate, "Ms. Johnson said he get regular meal!"(sic) Further review indicated that there was work being done in the kitchen which resulted in everyone getting bagged meals and "the situation was unavoidable." *Id*.

In a grievance dated April 8, 2013, Baumgarten indicated he failed to receive a Kosher breakfast meal. Despite being advised a substitute would be provided, none was. Further review indicated that Ms. Anthony in dietary stated Baumgarten had received a Kosher breakfast and that additional Kosher breakfasts had not been ordered but should be delivered in a few days. *Id*., p. 3. The grievance, dated April 10, 2013, is illegible but the response indicates "an

unfortunate incident. Measures are being taken to ensure this doesn't happen again." *Id.*, p. 4. Baumgarten indicates he filed other complaints but does not have copies of same. *Id.*

Defendants offer the following information in support of their motion for summary judgment. The Detention Center Inmate Handbook, provided to all persons confined at the Detention Center, sets out the applicable rules and regulations of the Detention Center. ECF No. 28, Ex. 2. Pursuant to Detention Center policy, all inmates and detainees are served three meals per day which are all pork-free. *Id.*, Ex. 2, pp. 7-8; Ex. 3. Alternative diets are provided for medical or religious reasons. *Id.*, Ex. 2, pp. 7-8; Ex 3, p. 2. A common fare, lacto-ovo vegetarian diet comprised of vegetables, fruit and "no-flesh" protein, is provided and was "designed as the foundation from which modifications [could] be made to accommodate the religious diets of various faiths." *Id.*, Ex. 3, p. 1; Ex. 2, p. 8; Ex. 8. Defendants understand this diet conforms to the dietary requirements of various faiths, including the Kosher diet for Jewish inmates. *Id.*, Exs. 9.

Additionally, defendants note that beyond the lacto-ovo diet, the Dietary Supervisor routinely has on hand pre-packaged Kosher meals purchased from an outside vendor. *Id.*, Ex. 8; Ex. 9. The Detention Center also stocks canned goods and prepackaged Kosher foods or foods marked "pareve" which indicates the food could be served with either milk or meat meals. *Id.*, Ex. 3. Defendants further offer that at times, Detention Center staff, including the Warden, have gone to local grocery stores to purchase items which were not on hand in order to accommodate special diets. *Id.*, Exs. 8, 9 & 10.

Main line diets at the detention center contain approximately 2800 calories per day. *Id.*, Exs. 8 & 9. The pre-packaged Kosher meals contain smaller portions than the regular meals

prepared at the detention center and therefore are supplemented with bread, fruit and vegetables which are Kosher. *Id.*, Ex. 8, Ex. 9. All meals for Detention Center inmates are prepared in the Detention Center kitchen. *Id.*, Ex. 9.

Plaintiff was a pre-trial detainee held at the Detention Center from January 18 to May 6, 2013. *Id.*, Ex. 1, p. 23. Plaintiff identified as an orthodox Jew and was approved to receive Kosher meals. *Id.*, Ex 1, pp. 13-14. Throughout plaintiff's detention he received frozen pre-packaged meals marked "Kosher" which were microwaved in the Detention Center kitchen's microwave. *Id.*, Ex. 8, Ex. 9. Lt. Martin avers that she does not recall a time during plaintiff's detention when the Detention Center ran out of pre-packaged Kosher meals. *Id.*, Ex. 9. His prepacked Kosher meals were supplemented with fruits and vegetables. *Id.*

Patricia Shupple, Deputy Director of the Howard County Department of Corrections, and Louise Luvinia Martin, Dietary Supervisor met with Baumgarten regarding his continued complaints of not receiving Kosher meals. As a result of the meeting they agreed to provide his meals on a Styrofoam tray. *Id.*, Exs. 8 & 9. Schupple noted that all items served to plaintiff had been reviewed for the proper Kosher markings. *Id.*, Ex. 4. Schupple and Martin believed that their meeting with plaintiff and use of Styrofoam trays resolved plaintiff's complaint. *Id.*, Exs. 8 & 9. They further indicate that any delivery of non-Kosher food items to plaintiff were isolated errors. *Id.*

In late March, 2013, the Detention Center kitchen was closed due to a broken pipe. *Id.*, Exs. 8 & 9. During the week the kitchen was inoperable the Detention Center arranged to obtain bag meals for inmates for breakfast and dinner and hot meals for lunch. *Id.*, Ex. 8. Plaintiff was provided the same bag meal as all other inmates which was brought from outside the facility. *Id.*,

Exs. 4 & 8. The bag meals contained boiled eggs, cereal, yogurt and pastries for breakfast and cheese, turkey, or peanut butter sandwiches with chips, pretzels, and fruit for dinner. *Id*., Ex. 8. Plaintiff received pre-packaged Kosher meals for his hot lunch. *Id*., Ex. 8.

Plaintiff's medical records refute his contention that he lost 30 pounds while housed at the Detention Center. On January 20, 2013, when he entered the Detention Center he weighed 233 pounds. *Id*., Ex. 6.  He weighed 232 pounds on February 2, 2012; 228 pounds on March 7, 2013; 220 pounds on April 11, 2013, and 226 pounds on April 18, 2013. *Id*, Ex. 5, 7 & 9.

Defendants indicate that initially they were confused by plaintiff's continued complaints regarding Kosher meals as, except when the kitchen was closed, all of the meals provided to him were pre-packaged Kosher meals.  *Id*., Ex. 8. Ultimately, defendants discerned that his complaints were not about the food but that the food was not prepared in a "Kosher kitchen." *Id*., Exs. 8 & 9; Ex. 1, pp. 25-26.  Setting aside a dedicated area and kitchen staff to specially prepare food for a single inmate would greatly impact the operation of the kitchen, as would requiring the Detention Center to specially purchase utensils, cooking implements, etc., to prepare food for  a single inmate. *Id*., Exs. 8 & 9. Additionally, implementing special meal preparations for a single inmate would lead to additional requests for special treatment and lead to the appearance that one class of inmates was treated more favorably than others. *Id*., Ex. 9.

### STANDARD OF REVIEW

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very

terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## ANALYSIS

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact on the free exercise of

religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA establishes a statutory protection for the free exercise of religion that exceeds the requirements of the Free Exercise Clause of the First Amendment. *See Holt v. Hobbs,* ___ U.S. ___, 135 S.Ct. 853 (2015)*; Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir.2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution"). "'RLUIPA adopts a ... strict scrutiny' standard." *Couch v. Jabe,* 679 F.3d 197, 203 (4th Cir. 2012) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n. 8 (4th Cir. 2006)). Under RLUIPA, the "plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. If the plaintiff satisfies this requirement, the government must then prove that the challenged policy is

the least restrictive means of furthering a compelling governmental interest." *Couch*, 679 F.3d at 200 (internal citations omitted).

Inmates have a constitutional right to receive a nutritious diet in keeping with their religious beliefs. *See Ross v. Blackledge*, 477 F.2d 616, 618-19 (4th Cir. 1973). As indicated, however, the right is not absolute. Under RLUIPA, officials face a higher burden of persuasion. They must prove that their decision not to accommodate the inmate's religious dietary needs furthers compelling state interests and that there are no less restrictive means to address those interests. *See* § 2000cc-1(a)(1)-(2). Officials need not provide a special religious diet if the inmate can maintain an adequate diet by choosing items from the available menu. *See Abernathy v. Cunningham,* 393 F.2d 775, 778 (4th Cir. 1968).

The Detention Center maintains that the pork-free regular diet and a lacto-ovo vegetarian diet were provided to accommodate a broad spectrum of religious practices. Moreover, the Detention Center made further reasonable efforts to accommodate plaintiff's religious preferences by providing him with Kosher meals prepared by an outside vendor. Although it appears that on occasion non-Kosher meals may have inadvertently been served to plaintiff, correctional staff made every effort to correct the oversight. When the kitchen was operable, plaintiff was provided pre-packaged Kosher meals, prepared by an outside Kosher vendor, on Styrofoam trays.[5] During the week the kitchen was inoperable plaintiff was provided bag breakfasts and dinners, the same as all other inmates, and received hot prepackaged Kosher meals for lunch. This situation was temporary and unavoidable.

---

[5] The Styrofoam trays were used because the plastic trays which were reusable were not kept Kosher. ECF 28, Ex. 1, p. 7.

Upon due consideration of the pleadings and exhibits, I find no violation under the First Amendment or RLUIPA. The Detention Center provides a pork free diet and lacto-ovo vegetarian diet in an effort to provide neutral menus which could accommodate the needs of various religious groups. The difficulties experienced, including additional costs and creation of perceived favoritism between religious groups, are legitimate compelling interests that override the minimum burden placed on plaintiff's ability to follow a Kosher diet. Such a determination is reasonably related to promoting legitimate penological interests. *See Cooper v. Lanham, et al.*, 145 F.3d 1323 (4th Cir. 1988). Other courts have found a legitimate penological interest in providing inmates a lacto-ovo vegetarian diet, rather than a Kosher diet, in light of the attenuated costs in providing Kosher meals which, as they are to be prepared in a separate kitchen with separate utensils, are generally prepared off-site by an outside vendor. *See Baranowski v. Hart*, 486 F. 3d 112 (5th Cir. 2007) (failure to provide Kosher meals did not violate inmates' rights); *Andreola v. Wisconsin*, 211 Fed. Appx. 495 (7th Cir. 2006) (under RLUIPA, prison is not required to permit an inmate to supervise the preparation of this meals or to spend additional money to provide him with prepackaged kosher meals); *Linehan v. Crosby*, 346 Fed. Appx. 471 (11th Cir. 2009)(controlling costs is a compelling government interest and serving vegan, rather than kosher, was the least restrictive means). Moreover, there is simply no requirement for accommodation of religious observances to take precedence over institutional security concerns. *See Cutter v. Wilkinson,* 544 U.S. 709, 725 (2005).

Additionally, as noted, the Detention Center made further reasonable efforts to accommodate plaintiff's religious preferences by providing him more than the common fare lacto-ovo diet. Rather he was provided Kosher meals prepared by an outside vendor. Although

10

it appears that on occasion common fare meals were inadvertently served to plaintiff,[6] correctional staff made every effort to correct the oversight.  When the kitchen was operable, plaintiff was provided pre-packaged Kosher meals, prepared by an outside Kosher vendor, on Styrofoam trays.  While the kitchen was inoperable plaintiff was provided bag lunches, as were all other inmates, and received hot prepackaged Kosher meals for lunch.  Plaintiff has failed to meet his burden of demonstrating that his ability to practice his religion was substantially burdened or restricted by the Detention Center's lack of a Kosher kitchen, or occasional non-delivery of Kosher meals. Defendants made reasonable efforts to ensure that plaintiff was provided a Kosher diet.  Additionally, no injury has been demonstrated.

For the aforementioned reasons, defendants' motion for summary judgment shall be granted.  A separate order shall be entered reflecting the opinion set out herein.


Dated: February 25, 2015         _____/s/_____
                                 J. Frederick Motz
                                 United States District Judge

---

[6] ECF No. 28, Ex. 1, p. 9.